**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-00668-CMA

DONNA G. MARTINEZ,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING IN PART ADMINISTRATIVE LAW JUDGE'S DECISION AND REMANDING IN PART FOR FURTHER DETERMINATION BY ADMINISTRATIVE LAW JUDGE

---

This is a social security benefits appeal brought under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Plaintiff Donna G. Martinez challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for social security disability benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Plaintiff argues that the ALJ committed two errors at steps four and five of the Social Security Administration's five-step sequential evaluation process[1] when he rendered his opinion, namely:

---

[1] That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work, based on her residual functional capacity (RFC); and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of proof from steps one through four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

(1)     The ALJ improperly rejected the opinions of six of Plaintiff's treating providers regarding Plaintiff's inability to sustain regular employment; and

(2)     The ALJ failed to properly consider the impact of Plaintiff's mental impairments by:

    (a)     Improperly rejecting the opinion of Plaintiff's treating psychiatrist, Dr. Musharraf Nizami, and

    (b)     Improperly analyzing Plaintiff's mental residual functional capacity in light of her specific mental impairments.

Plaintiff requests an order granting a favorable decision, or in the alternative, remanding the case for further proceedings. (Doc. # 11 at 19). After considering her arguments and those of Defendant, and for reasons discussed below, the Court affirms the ALJ's no-disability determination in connection with Plaintiff's physical limitations and remands this action to the Administrative Law Judge ("ALJ") for further proceedings regarding the extent to which Plaintiff's mental impairments, whether in isolation or in combination, render her disabled, as well as the extent to which Plaintiff's pain medications enhance her mental impairments.

## I.     BACKGROUND

Plaintiff was born in August 1966. She completed high school and worked in the past as a child attendant, nurses' aide, housekeeper, fast food worker, and waitress.

Plaintiff applied for Social Security disability benefits on July 29, 2004, claiming a disability date of February 22, 1999, arising from "back pain, fatigue, depression, osteoarthritis, fibromyalgia". (Initial Disability Report at Ar. 83-84). A hearing was held on March 16, 2006. In a memorandum for the hearing, Plaintiff amended her disability onset date to July 1, 2004, at which time she was 37 years old. (Ex. 12E at Ar. 131).

The ALJ issued a decision denying Plaintiff's claim on July 21, 2006. (Ar. 19-31). In pertinent part, the ALJ made the following findings:

- Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; mood disorder; and obesity.

- Plaintiff has the RFC to perform work that: only requires lifting and carrying up to 10 pounds occasionally and five pounds frequently; restricts standing and walking to two to four hours during an eight-hour workday; only requires sitting for four to six hours during an eight-hour workday; allows her to change from standing and/or walking to sitting as needed; does not require her to climb ladders, ropes, or scaffolds; and only demands occasional climbing of stairs and ramps, balancing, stopping, kneeling, crouching, and crawling.

  Based on evidence in the record concerning Plaintiff's mental impairments arising from a mood disorder, and in light of notations in the medical records that Plaintiff communicated well, without difficulty or hostility, attended sporting events, and maintained friendships, the ALJ determined that Plaintiff's "mild to moderate mental difficulties would limit her to unskilled work that involves simple tasks." (Ar. 29). (However, the ALJ did not explain how he determined the appropriateness of unskilled work.)

- Jobs are available in the national economy to accommodate Plaintiff's physical limitations. Though the vocational expert opined at the hearing that no jobs would be available if a candidate had Plaintiff's mental limitations, the ALJ ignored this opinion because he concluded that Plaintiff's mental capacities are not so limited.

Plaintiff sought review of the ALJ's decision. On January 16, 2007, the Appeals Council affirmed the ALJ's decision and Plaintiff's appeal was denied. (Ar. 6-8). On February 5, 2007, Plaintiff filed a civil action, seeking judicial review of the denial of disability benefits. (Doc. #3, Case No. 07-cv-254). United States Judge John L. Kane was assigned to that case.

On August 21, 2007, Defendant filed an Unopposed Motion to Remand on grounds that "SSA's Appeals Council, in its role as finder of fact, has further reviewed

3

Plaintiff's case and determined that a remand for further proceedings is appropriate."

(Doc. #22, Case No. 07-cv-254).  Accordingly, Judge Kane granted Defendant's

Unopposed Motion for Remand.  (Doc. #23, Case No. 07-cv-254; Ar. 397).  On

December 13, 2007, the Appeals Council remanded the case for further proceedings

consistent with Judge Kane's Order.  (Ar. 399-403).  In pertinent part, the Appeals

Council determined that remand was necessary because the ALJ "did not address or

resolve conflicts" between the skill demands of the recommended jobs and Plaintiff's

limitations to simple tasks.  (Ar. 401).  In pertinent part, the Appeals Council also

directed the ALJ to:

• consider evidence submitted to the Appeals Council from Plaintiff's treating psychiatrist concerning Plaintiff's mental limitations and to explain the weight given to such opinion evidence;

• request additional evidence concerning Plaintiff's mental limitations, if necessary;

• obtain a consultative mental health evaluation or medical expert testimony to clarify the nature and severity of the claimant's mental impairments, if necessary; and

• further evaluate Plaintiff's mental impairment in accordance with the special technique described in 20 C.F.R. 404.1520a and 416.920a and, in the decision, provide specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 404.1520a(c) and 416.920a(c).

(Ar. 402)

## A.   <u>SUPPLEMENTAL HEARING</u>

On July 10, 2008, a supplemental hearing was held to resolve inconsistencies

between the vocational expert's prior testimony and the identified job and to further

evaluate Plaintiff's mental impairments. (Ar. 524-562). The hearing involved testimony from two medical experts, one a licensed psychologist, by the name of Robert Pelc.[2]

Dr. Pelc's opinions are particularly dismissive of the disability opinions of Plaintiff's treating physicians. Dr. Pelc opined that two of Plaintiff's psychiatric diagnoses were supported adequately by the record, namely a mood disorder (referred to in treatment notes as depression) and an anxiety-related disorder (referred to in treatment notes alternatively as anxiety or post-traumatic stress disorder). (Ar. 533). In view of Plaintiff's mood and anxiety-related disorders, Dr. Pelc opined on Plaintiff's degree of functional limitation in the following four broad functional areas set forth in 20 C.F.R. § 404.1520a(c)(3): (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. According to Dr. Pelc, Plaintiff's activities of daily living are only mildly-limited; social functioning is moderately limited; concentration, persistence, and pace are mild-to-moderately limited; and there are no episodes of decompensation. (Ar. 533-34).

Dr. Pelc identified two opinions from Plaintiff's treating physicians that were inconsistent with the medical record. First, Dr. Pelc identified a June 20, 2008 letter from a Dr. Dudley Sigler-Black, Plaintiff's treating psychologist (Ex. 19F at Ar. 480), which states that Plaintiff suffers from a significant psychological disability. (Ar. 534). Dr. Pelc acknowledges that Dr. Black's opinion is premised on having treated Plaintiff on at least 16 occasions and the results of psychological tests he had administered, some of which could "be reflective of significant psychological problems". (Ar. 534; *see also*

---

[2] The other medical expert was Dr. Lawrence Campodonic, a physician specializing in internal medicine, who opined on Plaintiff's physical limitations.

Ex. 19F at Ar. 480).  Nevertheless, Dr. Pelc dismissed Dr. Sigler-Black's conclusions because no evidence was presented concerning the referenced treatment sessions or test results.  (Ar. 534-35).  Based on the record before the Court, no apparent attempt was made to obtain records concerning the referenced treatment sessions or test results in advance of, or subsequent to, the supplemental hearing.

Second, Dr. Pelc identified a September 18, 2006 medical questionnaire and a July 29, 2004 Colorado Department of Human Services exam sheet, both completed by Dr. Musharraf Nizami, Plaintiff's treating psychiatrist.  (Ar. 535).  In the first-listed document, dated September 18, 2006, Dr. Nizami opined that Plaintiff has "frequent" problems with concentration, persistence, and pace and "marked" impairment in her ability to maintain regular attendance and be punctual within customary tolerances and experiences.  (Ex. AC3 at Ar. 327-29).  Nevertheless, Dr. Pelc concluded that Plaintiff has, at most, a moderate-level restriction in connection with concentration, persistence, and pace because Plaintiff's contemporaneous treatment records, mental status examinations, and statements reflect that Plaintiff does not have "significant problems with attention, concentration, memory or information processing."  (Ar. 535).  Further, Plaintiff's records do not reflect any major changes in her treatment regimen or indications of more than intermittent treatment visits.  (Ar. 538).  Yet, at the same time, Dr. Pelc testified that "the contemporaneous record does not provide a lot of detail that describes specific functioning in these areas" and that, based on the available records, "[i]t's a little more difficult to differentiate whether the kinds of problems [Plaintiff] is having...are in a mild or moderate range".  (Ar. 538-39).  Finally, Dr. Pelc acknowledged that, when assessing Plaintiff's limitations, he did not consider the impact of Plaintiff's

pain and/or medications on her cognitive functioning, even though several of Plaintiff's treating providers determined that her pain and/or medications affect her ability to focus and concentrate. (Ar. 544; *see also* Treatment Records at Ar. 222, 332, and 489). Dr. Pelc simply looked at the impact of Plaintiff's mood and anxiety disorders on her cognitive functioning. (Ar. 544).

In the second document, dated July 29, 2004, Dr. Nizami opined that Plaintiff has "no work capacity" because of Plaintiff's mood disorder, depression, and sleeping and concentration problems and that Plaintiff would remain unable to work until her mood stabilized. (Ex. 4F at Ar. 158-59). However, Dr. Pelc dismissed Dr. Nizami's "no work" determination because contemporaneously-dated treatment notes indicate that Plaintiff is doing better with increased medication. But, again, Dr. Pelc did not consider the impact Plaintiff's pain and/or medications had on her ability to concentrate. (Ar. 544-45). Dr. Pelc also relied on treatment notes two months *prior to* Dr. Nizami's "no work" determination, which indicate a Global Assessment Function (GAF) score of 55-60, a score not indicative of a significant psychological impairment. (Ar. 537; Ex. 4F at Ar. 166). However, Dr. Pelc did not reconcile the higher GAF score noted by Dr. Nizami in 2004 with the lower GAF score noted by Dr. Sigler-Black four years later in 2008.[3]

Martin Rauer, a vocational expert, also testified at the supplemental hearing. He opined on various hypothetical questions posed by the ALJ. (Ar. 555-560). The ALJ first asked whether an individual, who is limited to the sedentary exertional level, and

_____

[3] Dr. Sigler-Black had assessed a GAF score of 46, which, as represented in Plaintiff's Opening Brief, signifies "serious symptoms or any serious impairment in social, occupational or school functioning." (Doc. #11 at 14-15, citing to Ar. 480 and Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 4th Ed. 1994 (DSM-IV).

has the same age, education, vocational history as Plaintiff and the following physical limitations could perform any of Plaintiff's past relevant work:

> Standing and walking would be limited to two to four out of an eight-hour day. Sitting would be four to six out of an eight-hour day. This person would have to have the option to change from standing and/or walking to the seated position as needed. There would be no climbing of ladders, ropes or scaffolds. The remainder of postural functioning would be occasional for the climbing of stairs and ramps, balancing, stooping, kneeling, crouching and crawling. Reaching in all directions bilaterally would be occasionally. Pushing and pulling with the upper and lower extremities would be limited to the exertional level. And the work would be in the unskilled [level].[4]

(Ar. 555, Transcript of July 10, 2008 Hearing). The vocational expert opined that Plaintiff's "[p]ast relevant work would be ruled out based on that hypothetical." (Ar. 556). However, the vocational expert identified other available jobs that existed in significant numbers in the state and national economy, such as a scale attendant, surveillance system monitor, and information clerk. (Ar. 556-57).[5]

The ALJ then modified the hypothetical with the following moderate mental limitations identified by Dr. Nizami: attention and concentration; coordination or proximity to others without being unduly distracted; ability to respond appropriately to changes in the workplace; and ability to travel in an unfamiliar place. (Ar. 559-60). The vocational expert opined that "this particular combination of moderates would render a person unable to perform in a competitive labor market." (Ar. 560).

## B. ALJ'S DECISION

---

[4] Although the ALJ inquired about an unskilled-level position, he provided no explanation for how he determined the appropriateness of that skill level.

[5] The first two positions had a listed SVP ("specific vocational preparation" or skill level) of 2 in the Dictionary of Occupational Titles and the last position has a listed SVP of 4. However, the vocational expert opined that, based on his experience, the information clerk position is more appropriately-identified as an SVP of 1. (Ar. 556-58).

On August 28, 2008, the ALJ again denied Plaintiff's claim, finding that she had not been under a disability within the meaning of the Social Security Act. (Ar. 378-396). Although the ALJ's August 28, 2008 decision was more thorough and detailed than the July 21, 2006 decision, the ALJ failed to address Dr. Pelc's expressed frustration about the lack of detailed evidence to support the disabling nature of Plaintiff's mental impairments as assessed by Drs. Sigler-Black and Nizami. The ALJ also failed to consider the combined impact of Plaintiff's moderate mental limitations and/or the potentially disabling impact of Plaintiff's medications.

The ALJ found as follows at each of the following five sequential steps:

1.      Plaintiff has not engaged in substantial gainful activity since July 1, 2004, the amended disability onset date.

2.      Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; obesity; an affective disorder; an anxiety-related disorder.

3.      Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1.

4.      Based on Plaintiff's physical impairments, Plaintiff has the RFC to perform sedentary work, subject to the following limitations: stand and/or walk for two to four hours in an eight hour workday; sit for four to six hours during an eight hour workday; be able to change position from standing and/or walking to sitting, as needed; should never climb ladders, ropes, or scaffolds; only occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl; only occasionally reach in all directions; and push and pull with both extremities at no greater than the sedentary exertional level.

Regarding mental impairments, the ALJ determined once again that "available evidence provides no indication that the claimant suffers more than mild to moderate mental functional impairment". The ALJ then summarily concluded that Plaintiff has the RFC to perform unskilled work.

5.      Plaintiff is unable to perform any past relevant work, because she is
limited to lifting and carrying up to 10 pounds and walking and standing for
two to four hours in a normal workday.

## 1.      Assessment of Plaintiff's Physical Limitations

In drawing his conclusions, the ALJ evaluated the medical evidence from

Plaintiff's four treating sources who opined on Plaintiff's physical limitations, in the

following manner.[6]

### 1.      Dr. Rona Knudsen

On July 6, 2004, Dr. Rona Knudsen, Plaintiff's treating physician, opined that

Plaintiff has no work capacity due to chronic back pain.  (Ex. 9F, Ar. 215-215a).  On July

27, 2004, Dr. Knudsen opined that Plaintiff would be unable to walk up 20 stairs and

required a ground floor apartment, due to her physical limitations.  (*Id.* at Ar. 212).  In

January 2005, Dr. Knudsen opined that claimant would be limited to lifting and carrying

up to ten pounds and would not be capable of lifting patients.  (*Id.* at Ar. 208).  However,

the ALJ determined that Dr. Knudsen's opinions lacked objective support and appeared

to be based on Plaintiff's subjective pain complaints[7] and, therefore, were not entitled to

controlling weight.  (Ar. 390).  Further, the ALJ noted that Plaintiff's reports of increased

pain during this period were due to Plaintiff's taking lower strength medication, rather

than due to physical reasons.  (*Id.*; *see also* Ex. 9F at Ar. 213) (noting Plaintiff's weaker

doses of Vicodin and no doses of Celebrex).

---

[6] Plaintiff's two other treating sources opined on her mental limitations.

[7] "[S]ubjective complaints of pain must be accompanied by medical evidence and may be disregarded if
unsupported by any clinical findings[.]" *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987); *see also Nieto v.
Heckler*, 750 F.2d 59, 61-62 (10th Cir. 1984) ("Subjective pain must be evaluated with due consideration for
credibility, motivation, and medical evidence.")

2.    Dr. Dexter Koons

In late 2004 and early 2005, Plaintiff's treating neurologist, Dr. Dexter Koons,

opined on Plaintiff's physical limitations.  (Ex. 10F at Ar. 219-32).  Three years later, Dr.

Koons confirmed that Plaintiff's physical limitations remained the same.  (Ex. 22F at Ar.

490).  However, the ALJ concluded that the records from Dr. Koons's office mostly

document Plaintiff's subjective pain complaints and contain no support for the physical

limitations, as ascertained by Dr. Koons.  In particular, the ALJ noted that the records

lacked objective evidence of upper extremity or cervical pathology that would prevent

the claimant from pushing or pulling, or substantiate Plaintiff's claim that she cannot sit

for long periods, even if allowed to change position.

3 and 4.    Amy Miller, Physician's Assistant and Dr. Michelle Pennington

On June 21, 2006, Amy Miller, a physician's assistant for Plaintiff's treating

physician Michelle Pennington, M.D., noted on an El Paso County Department of

Human Services physical limitation evaluation form that Plaintiff has "severe chronic

back pain and is permanently disabled" and is "unable to work".  (AC4 at Ar. 331-332).

Ms. Miller further noted that "[m]edication helps to manage [Plaintiff's chronic] pain." (*Id*.

at 331).

However, treatment notes from that same date undermined this assessment.  In

those notes, Ms. Miller states that Plaintiff "has actually taken herself off of her Prinzide

and would like to begin exercising" and "has good strength and range of motion in her

upper and lower extremities," but Plaintiff's "[r]eflexes are diminished bilaterally."  (Ex.

23F at Ar. 522).  At Plaintiff's request, Ms. Miller created an exercise regimen for

Plaintiff, which consisted of walking for 15 minutes a day, at least 5 times a week, with gradual increases, as per Plaintiff's tolerance. (*Id.* at Ar. 523).

Nevertheless, despite these above-referenced notes of improvement, on January 4, 2008, on a Colorado Department of Human Services Medical Re-Examination form, which Dr. Pennington co-signed, Ms. Miller again reported that Plaintiff "has been or will be disabled to the extent [she is] unable to work at any job for a total period of six (6) or more months due to a physical or mental impairment that is disabling."[8] (Ex. 21F at Ar. 488). As a basis for this disability, Ms. Miller stated that Plaintiff "has chronic debilitating pain and is seeing multiple specialists. She is unable to work." (Ex. 21F at Ar. 489).

However, as the ALJ duly notes, Ms. Miller and Dr. Pennington do not provide any explanation for the standards used to determine Plaintiff's disability, and failed to describe any objective findings on which the disability determination was based. (Ar. 392). To the contrary, Ms. Miller's treatment notes, which Dr. Pennington appears to have co-signed, undermine the disability determination. For example, Ms. Miller's treatment notes from January 4, 2008, the same date on which Ms. Miller completed the Colorado Department of Human Services Medical Re-Examination form, only reflect Plaintiff's complaints about irritated eyes. (Ex. 23F at Ar. 500). Even one month later, Ms. Miller's treatment notes, which Dr. Pennington appears to have co-signed, do not reflect any patient complaints about chronic, debilitating pain. (Ex. 23F at Ar. 499). Further, over the preceding twelve months in 2007, Ms. Miller's notes contain only

---

[8] Although Ms. Miller and Dr. Pennington opined as to Plaintiff's disability due to an inability to work for a "total period of six (6) or more months, twelve continuous months is the threshold period for a disability determination pursuant to Social Security Administration regulations. *See* 20 C.F.R. § 404.1527(a).

minimal notations of Plaintiff's chronic pain. (*See id.* at 504, Plaintiff "is starting to have trouble with aches and pains"; *see also id.* at Ar. 515, Plaintiff "has been having leg pain over the last couple of days.").

Based on the foregoing, the ALJ concluded that he was "unable to give [the opinions of Ms. Miller and Dr. Pennington] any weight". (Ar. at 392).

## 2. Assessment of Plaintiff's Mental Limitations

In drawing his conclusions about Plaintiff's mental limitations, the ALJ evaluated in the following manner the medical evidence from Plaintiff's two treating sources who opined on Plaintiff's mental limitations, namely Drs. Musharraf Nizami and Dudley Sigler-Black.

Part of the ALJ's analysis focused on records in which Plaintiff's mood disorder appeared to be aggravated by situational stressors such as a then-recent divorce, domestic difficulties with her ex-husband, and/or a failure to take her mental health medication. (Ar. 387; Ex. 4F at Ar. 154, 156, 160, 162; Ex. 18F at Ar. 445).

The ALJ also noted that "[t]reatment notes have provided no observations consistent with severe physical limitations or cognitive losses." (Tr. 388). The ALJ further noted that "[t]he claimant reports no side effects from her mental health medications, and although she thinks her pain medicine may interfere with her thinking, neither her primary care provider, her orthopedic treatment provider, nor her mental health professional has documented any change in her thought process or cognition." (*Id*).

Finally, the ALJ acknowledged Dr. Sigler-Black's report of Plaintiff's significant psychological disability and low GAF score and Dr. Nizami's report of Plaintiff's

"frequent" problems with concentration, persistence and pace. (*Id.* at Ar. 389-90).

However, the ALJ dismissed these findings for a lack of evidence in the

contemporaneous record, in much the same way that Dr. Pelc had done. (*See id.* at

389-90, 393). Also, the ALJ failed to address Dr. Pelc's concerns about the lack of

clarity in Dr. Nizami's records and the lack of objective support for Dr. Sigler-Black's

conclusions. In fact, the ALJ actually faulted Dr. Sigler-Black for "not provid[ing] his

treatment records or even the results of psychological testing." (Ar. 393). Having

dismissed Dr. Nizami's and Dr. Sigler-Black's conclusions out of hand, the ALJ then

adopted, without further detailed explanation, Dr. Pelc's summary conclusions that

Plaintiff's "degree of mental impairment...would allow the performance of unskilled

work." (Ar. 394).

### C. Plaintiff's Appeal

Sometime after the ALJ issued the underlying unfavorable decision on August

28, 2008, Plaintiff appealed the decision. On March 10, 2009 the Appeals Council

affirmed the ALJ's decision. (Tr. 370-373). On March 25, 2009, Plaintiff filed a

complaint challenging Defendant's denial of disability benefits. After the parties filed

their briefs, the Court heard oral argument on January 7, 2010, and took the matter

under advisement. (Doc. #19).

### II. ANALYSIS

## A.    Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).  The Court does not re-weigh the evidence or substitute its judgment for that of the Commissioner.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

## B.    Evaluation of Disability

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a *continuous* period of not less than *twelve* months."  42 U.S.C. § 1382c(a)(3)(A) (2006) (emphasis added).  "[A] medical finding of disability is not based solely on objective test results.  It includes an evaluation of the patient's medical history and the physician's observations of the patient, and necessarily involves an evaluation of the credibility of the patient's subjective complaints of pain.  A medical opinion based on all of these factors is medical evidence supporting a claim of disabling pain, even if the

objective test results, taken alone, do not fully substantiate the claim." *Nieto v. Hecker*, 750 F.2d 59, 61-62 (10th Cir. 1984).

**C.** **Plaintiff's First Issue: Disability Determination Based on Plaintiff's Physical Impairments**

Plaintiff argues that the ALJ's disability determination was erroneous because the ALJ rejected the opinions of her treating sources concerning Plaintiff's inability to sustain work on a regular basis.

In particular, Plaintiff contends that the ALJ failed to take into account whether Plaintiff's need to take unexpected absences from work, have more frequent breaks at work, and inability to reliably and consistently perform work activities, would impact her ability to sustain employment. Finally, Plaintiff contends that the ALJ failed to give "good reasons" for not assigning controlling weight to the opinions of Plaintiff's treating physicians, as required pursuant to 20 C.F.R. § 404.1527(d)(2) (outlining factors to be considered by ALJ when assessing treating medical source opinions).

The opinion of a treating physician is generally given controlling weight. However, an ALJ can disregard that opinion, but only if it is contradicted by other medical evidence or otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 Fed. Appx. 757 (10th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The analysis of how much weight to accord a treating source opinion is sequential.

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *see also* 20 C.F.R. §

404.1527(d)(3) ("The more a medical source presents relevant evidence to support an

opinion, particularly medical signs and laboratory findings, the more weight we will give

that opinion. The better an explanation a source provides for an opinion, the more

weight we will give that opinion.")

If a treating physician's opinion is not given controlling weight, the ALJ must "give

good reasons" and consider a list of regulatory factors. *Watkins*, 350 F.3d at 1301

(reversing denial of benefits where the ALJ failed to articulate the weight, if any, he gave

the treating source's opinion, and the reasons for assigning that weight or for rejecting

the opinion); *see also* 20 C.F.R. § 404.1527(d)(2).[9] Though the ALJ must consider all

these factors, he need not discuss all of them. *See Andersen v. Astrue*, 319 Fed. Appx.

712, 718 (10th Cir. 2009). The ALJ's decision must be specific enough to make clear to

subsequent reviewers the weight given to the treating physician's opinion and the

reasons for that weight. *See Watkins*, 350 F.3d at 1300-01; *Miller v. Chater*, 99 F.3d

972, 976 (10th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In the instant case, as discussed below, the ALJ determined that the treating

sources' opinions were not well-supported by diagnostic techniques and, even if they

were, they were not consistent with other substantial evidence in the record. Thus, the

ALJ's analysis was proper and complete. Contrary to Plaintiff's contention, the ALJ did

---

[9] These regulatory factors include: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)(I), (d)(2)(ii), (d)(3)-(d)(6).

not "reject medical evidence on the basis of his lay interpretation" or base his opinion on his own credibility judgments, speculation, or lay opinion." (Doc. #11 at 7-8[10]). Rather, the record reflects that the ALJ gave meaningful consideration to the medical opinions of each of the six treating sources and gave "good reasons" for not giving controlling weight to each of these opinions. The "reasons" largely concerned the degree to which the medical opinion was unsupported by objective evidence, the inconsistency between the opinion and the record as a whole, and the extent to which the opinions were based on Plaintiff's subjective complaints of pain, all permissible reasons under 20 C.F.R. §§ 404.1527(d)(3) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion") and (d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). Having reviewed the entire record, the ALJ determined that overall, "the medical evidence does little to support [Plaintiff's] reports of physical and mental limitations that are so severe that she cannot work". (Ar. 388). Further, to the extent that the ALJ unfavorably viewed the credibility of Plaintiff's pain complaints, credibility determinations are for the ALJ to make based on the record as a whole. *See Tally v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (when determining the claimant's credibility and assessing the RFC, the ALJ properly considered "all" of the evidence, both medical and non-medical, as he was required to do); 20 C.F.R. §§ 404.1546, 416.946.

---

[10] Page number references are to the original numbering in the filed document.

In the instant case, the Court finds that the ALJ's non-disability determination with regard to Plaintiff's physical limitations is adequately supported by the record. Several of the treating sources' opinions regarding the disabling nature of Plaintiff's pain were based on her subjective complaints. Additionally, notations were made of instances where Plaintiff experienced increased pain when she was taking lower-strength medication, but in other instances, her pain was adequately managed by medication. By June 2006, Plaintiff's pain was sufficiently managed such that she commenced an exercise regimen. Indeed, these facts weigh against a finding of disability, even despite Plaintiff's subjective complaints of pain. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).[11] Further, though medical records reveal a protrusion of disc tissue, the records did not evidence any contact with any nerve root or with the spinal canal.

Finally, Plaintiff's daily activities also undermine her complaints of severe pain. Plaintiff's daily activities include light cleaning, shopping, cooking (albeit simple meals), limited driving, managing her finances, and running errands. These activities appear to be more than sporadic. Plaintiff also attends her daughter's basketball and volleyball games. (Ar. 351-358). In light of the foregoing, the Court finds that the ALJ's non-disability determination with regard to Plaintiff's physical limitations is based on sufficient evidence and the ALJ properly considered the opinions of Plaintiff's treating sources. Accordingly, the ALJ's non-disability determination with respect to Plaintiff's physical

---

[11] When considering the credibility of pain testimony, the ALJ should consider various factors, including "the levels of medication and their effectiveness, the extensiveness of attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston*, 838 F.2d at 1132.

limitations is affirmed.  *Cf. Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987) (finding that the plaintiff's daily activities do not undermine a disability determination, in light of his testimony that he can only sit, stand, walk, or drive a car intermittently, he does no yard work, and he only performs minor house chores to care for himself); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (holding that "working for an hour or so as a janitor in an intermittent fashion is not inconsistent with complaints of pain, especially in light of both appellant's and [his doctor's] testimony regarding pain"); *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983) (finding that the plaintiff's performance of a few household tasks, work on his cars, and driving on occasional recreational trips were merely sporadic and did not establish that he is capable of engaging in substantial gainful activity).

**D.      Plaintiff's Second Issue: The ALJ's Consideration of the Impact of Plaintiff's Mental Impairments**

Plaintiff contends that the ALJ failed to properly consider the impact of Plaintiff's mental impairments because: (a) he improperly rejected the opinion of Plaintiff's treating psychiatrist, Dr. Musharraf Nizami and (b) he improperly found that Plaintiff can sustain unskilled work in spite of her mental impairments, including the side effects of her pain medications.

"The [Commissioner] must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability."  *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991) (remanding case where ALJ failed to correctly evaluate the claimant's mental impairments in combination with the effects of his pain).  The special technique for evaluating a disability claim that

involves mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The

degree of functional limitation resulting from an impairment is identified by considering

"all relevant and available clinical signs and laboratory findings, effects of [the]

symptoms, how the functioning may be affected by factors including, but not limited to,

chronic mental disorders, structural settings, medication, and other treatment."  20

C.F.R. § 404.1520a(c).  After the ALJ assesses the degree of functional limitations in the

areas of daily living; social functioning; concentration, persistence, or pace; and episodes

of decompensation, the severity of the claimant's mental impairment will be determined.

20 C.F.R. § 404.1520a(d).  The claimant's mental limitations "must be expressed in

terms of work-related functions," such as understanding instructions, using judgment to

make work-related decisions, and interacting appropriately with the public or co-workers.

S.S.R. 96-8p, at *6 (Cum. Ed. 1996).  If the evidence is consistent but insufficient

evidence exists to render a disability determination, or if the ALJ is unable to reach a

conclusion after weighing the evidence, additional records will be requested or efforts will

be made to re-contact treating or examining sources, or to undergo consultative

examinations.  20 C.F.R. § 404.1527(c)(3).  The ALJ's "written decision must incorporate

[his] pertinent findings and conclusions".  20 C.F.R. § 404.1520a(e)(2).

     In the instant case, the Court finds that the ALJ's analysis of Plaintiff's mental

limitations fell short of the above-described criteria in three respects.  First, despite an

obligation to obtain additional evidence, where necessary, the ALJ was summarily

dismissive of Dr. Sigler-Black's June 2008 report that Plaintiff suffers from "serious

psychopathology" and has a low GAF score.  In dismissing the report for lack of objective

supporting evidence, the ALJ ignored the report's references to psychological tests and

several treatment visits.  Efforts to obtain these referenced documents should have been made, pursuant to 20 C.F.R. §§ 404.1512(e), 1527(c)(3).

Second, the ALJ was equally dismissive of Dr. Nizami's opinions concerning the disabling nature of Plaintiff's mental limitations, despite Dr. Pelc's testimony that Dr. Nizami's available records made it more difficult to determine whether Plaintiff's problems are in a mild or moderate range.  Thus, efforts should have been made to obtain additional evidence concerning Dr. Nizami's conclusions.

Finally, Dr. Pelc admitted on cross-examination that he had considered only the impact of Plaintiff's mood disorder and anxiety on her mental limitations and did not account for the impact of Plaintiff's medications or chronic pain on her mental limitations, despite notations in Plaintiff's medical records to that effect.  (Ar. 544-545).  Nevertheless, in the August 28, 2008 decision, the ALJ summarily concluded that he "accords great weight to the opinions of Dr. Pelc" and "concludes that [Plaintiff's] mild to moderate mental functional limitations, when combined with the side effects of her medications, would limit her to unskilled work."  (Ar. 393).  However, in adopting Dr. Pelc's conclusions, the ALJ failed to address notations from Plaintiff's treating sources, namely Drs. Koons and Pennington and physician's assistant Miller concerning the medications' impact on Plaintiff's ability to concentrate.[12]  Notably, consideration of medications' impact on a claimant's ability to function is an integral factor in a functional limitation analysis.  *See* 20 C.F.R. § 404.1520a(c).

_____

[12]  On April 8, 2005, Dr. Dexter Koons noted that Plaintiff is "[c]urrently on medication that will cause slowing of her reactions and concentration."  (Ar. 222).  Over a year later on May 21, 2006, physician's assistant Amy Miller noted that Plaintiff's "medication affects concentration" and "ability to organize/rational thought".  (Ar. 332).  Then nearly two years later, on January 4, 2008, Dr. Michelle Pennington and physician's assistant Amy Miller noted that Plaintiff "is on medications that affect her ability to concentrate."  (Ar. 489).

The lapses in the ALJ's assessment of Plaintiff's mental limitations impact the ALJ's summary conclusions that Plaintiff could perform unskilled work. *See* S.S.R. 96-9P, at *9 (Cum. Ed. 1996) (A substantial loss of the ability to meet any one of several basic work-related activities[13] for 8 hours a day, 5 days a week "*will* substantially erode the unskilled sedentary occupational base and would justify a finding of disability"; a less than substantial loss may or may not so erode the unskilled sedentary occupational base) (emphasis added); *see also Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) ("[w]hen a claimant suffers from a severe mental impairment...the determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial work activity") (internal citation and quotation omitted). In the instant case, not only did the ALJ fail to properly assess Plaintiff's mental limitations, the ALJ also failed to discuss, if not consider, how Plaintiff's mental limitations would impact her ability to perform even an unskilled, sedentary position. This lack of consideration is further evidenced by the ALJ's quick dismissal of the vocational expert's conclusion that no jobs would be available for an individual with the moderate mental limitations identified by Dr. Nizami. (*See* Ar. 396). *Cf. Jaramillo v. Massanari*, 18 Fed. Appx. 776, 778-79 (10th Cir. 2001) (affirming ALJ's rejection of vocational expert's testimony where testimony was based on a hypothetical containing facts not supported by the record). In the instant case, the record contains objective evidence that Plaintiff's mental limitations may be

---

[13] The following mental activities are "generally required by competitive, remunerative, unskilled work: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; dealing with changes in a routine work setting." (*Id.*)

sufficiently debilitating to support the vocational expert's conclusion as to the unavailability of sedentary, unskilled jobs.

In sum, despite the Appeals Council's December 13, 2007 Order (Ar. 397-403) the ALJ's August 28, 2008 decision failed to provide specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c) in connection with Plaintiff's mental limitations.  Also, pursuant to the Appeals Council's Order, the ALJ should have requested certain records and evidence concerning Plaintiff's mental limitations that were referenced, but not contained in the record, and were integral to a (non-)disability determination.  Therefore, the Court remands this case to the ALJ for further consideration of: (a) Plaintiff's mental limitations in light of the referenced evaluations and tests conducted by Drs. Dudley Sigler-Black and Mussharraf Nizami and (b) the combined impact of Plaintiff's pain and/or pain medications on her mental capacity, and (c) for a more thorough analysis of Plaintiff's ability to engage in mental activities required by competitive, remunerative, and unskilled work.

## III.    CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED THAT the judgment of the Administrative Law Judge is AFFIRMED with respect to the Administrative Law Judge's non-disability determination as it relates to Plaintiff Donna G. Martinez's physical limitations but REVERSED AND REMANDED with respect to the Administrative Law Judge's non-disability determination as it relates to Plaintiff's mental limitations, as well as the effect of Plaintiff's physical pain and/or pain medications on mental functioning capacity.

IT IS FURTHER ORDERED THAT this case is remanded to the Administrative Law Judge, E. William Shaffer, for further proceedings consistent with this order and judgment.

IT IS FURTHER ORDERED THAT this case is DISMISSED WITHOUT PREJUDICE.

DATED: April 29, 2010.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge